**BEFORE THE**
**UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE STARBUCKS CORPORATION MARKETING ) AND SALES PRACTICES LITIGATION ) ) ) | MDL No.____ |

**STARBUCKS CORPORATION'S MEMORANDUM**
**IN SUPPORT OF MOTION FOR COORDINATION OR**
**CONSOLIDATION AND TRANSFER PURSUANT TO 28 U.S.C. § 1407**

**I.     Introduction**

Plaintiffs have filed four putative class actions that are now pending in four different

districts—the Northern District of California, the Northern District of Illinois, the Southern

District of New York and the Central District of California[1]—against Starbucks Corporation

("Starbucks").  Each case relies on the same core factual allegations:  (1) Starbucks engages in

deceptive marketing practices by misrepresenting the quantity of made-to-order beverages sold

in its cafés; (2) Starbucks delivers beverages in cups that are too small to contain the amount of

beverage identified on its menu boards; and (3) Starbucks follows standardized recipes that result

in uniform under-filling of beverages.

The lawsuits all assert causes of action for breach of express and implied warranty, unjust

enrichment, negligent misrepresentation fraud/fraudulent concealment and violation of statutory

consumer protection claims for false advertising and unfair competition.  In addition, the cases

propose overlapping class definitions.  Under these circumstances, transferring the cases to one

---

[1] As of the date of this filing, one of the actions, *Forouzesh v. Starbucks Corporation,* Case No.
621572, remains pending in the Los Angeles County Superior Court.  The suit was filed on May
25, 2016 and Starbucks has not yet been served with Summons and Complaint.  Upon removal to
the United States District Court for the Central District of California, Starbucks will provide
notice to the Panel pursuant to Panel Rule 6.2.

court pursuant to 28 U.S.C. § 1407 will eliminate duplicative discovery, prevent inconsistent rulings on a number of pre-trial issues (including class certification), and conserve the resources of the judiciary and the parties by avoiding duplication.

## II.   Background

Starbucks' hand-crafted hot and cold beverages, along with other food and drink items, are served at thousands of cafés across the United States.  The putative class action complaints filed against Starbucks allege that it engages in deceptive marketing practices by misrepresenting the quantity of fluid ounces in certain hot and cold beverages sold at the cafés.  Common to all actions is the allegation that Starbucks cups are not large enough to deliver the amount of beverage identified on its menu boards and that following Starbucks' standardized recipes results in beverages that are under-filled.  Plaintiffs in two of the actions also allege that certain ingredients, milk foam in lattes and ice in iced beverages, do not count toward the beverage quantity and that it is deceptive for Starbucks to include those ingredients when identifying the size of the beverages.

### A.   *Siera Strumlauf and Benjamin Robles v. Starbucks*, **Case No. 3:16-cv-01306-TEH (N.D. Cal.)**

On March 16, 2016, Siera Strumlauf and Benjamin Robles, residents of California, filed a putative class action against Starbucks in the United States District Court for the Northern District of California.  They seek to represent a putative class of "All persons in the United States who purchased a Starbucks Latte (the 'Class.')."  Strumlauf Compl. ¶ 31 (Ex. A). The *Strumlauf* Plaintiffs also seek to represent a "subclass of all Class members who purchased a Starbucks Latte in California (the 'Subclass.')."  *Id.*, ¶ 32.

Plaintiffs Strumlauf and Robles' central allegations are that Starbucks lattes are under-filled.  More specifically, Plaintiffs allege that Starbucks falsely advertises various iterations of

its lattes by representing that "its Lattes contain '12 fl. oz.' for a Tall, '16 fl. oz.' for a Grande, and '20 fl. oz.' for a Venti," when they are "uniformly underfilled pursuant to a standardized recipe." *Id.*, ¶ 1.  Plaintiffs Strumlauf and Robles allege a variety of theories in support of their under-fill allegations, including that Starbucks baristas have no discretion in determining how much of a given ingredient is used in a latte. *Id.*, ¶ 16.  They allege eight claims for relief:  (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) unjust enrichment; (4) violation of California's Consumers Legal Remedies Act ("CLRA"); (5) violation of California's Unfair Competition Law ("UCL"); (6) violation of California's False Advertising Law ("FAL"); (7) negligent misrepresentation; and (8) fraud. *Id.*, ¶¶ 38-92.  Plaintiffs Strumlauf and Robles bring these causes of action on behalf of a putative nationwide class, and on behalf of a California subclass.  Their Complaint does not allege the class periods. *Id.*, ¶¶ 31-32.

*Strumlauf* is assigned to Senior United States District Judge Thelton E. Henderson. Starbucks filed a Motion to Dismiss and the hearing is presently set for June 1, 2016.  Discovery has not commenced, but Judge Henderson has set an initial status conference for June 27, 2016. Shortly after filing this motion, Starbucks will seek a stay of the case until the Judicial Panel on Multidistrict Litigation ("Panel") rules on this Motion to Transfer.

**B.**     ***Stacy Pincus v. Starbucks Corporation,*** **Case No 1:16-cv-04705 (N.D. Ill.)**

On April 27, 2016, Stacy Pincus, a resident of Illinois, filed a putative class action against Starbucks seeking to represent a putative class of "[a]ll persons in the United States of America who purchased one or more of Defendant's Cold Drinks at any time between April 27, 2006 and the present (the 'Class')."  Pincus Compl., ¶ 48 (Ex. B).  In addition, Plaintiff seeks to represent "a subclass of all Class members who purchased a Cold Drink in Illinois at any time between April 27, 2013 and the present (the 'Subclass.')." *Id.*, ¶ 49.

Like the *Strumlauf* Plaintiffs, Pincus' central allegations are that Starbucks' iced drinks, including its "iced coffee, iced tea, and iced blended specialty drinks," as well as its "shaken iced tea, shaken iced tea lemonade, Refreshers™, and Fizzio ™ handcrafted sodas" are under-filled.[2]  Pincus Compl., ¶¶ 1, 17.  Pincus alleges that Starbucks falsely advertises its iced beverages by representing that a customer will receive 12 fluid ounces for a Tall, 16 fluid ounces for a Grande, 24 fluid ounces for a Venti, and 30 fluid ounces for a Trenta.  *Id*., ¶¶ 18-19.  Pincus alleges that Starbucks iced beverages "are created according to a standard designed practice."  *Id*., ¶ 22.  The Complaint alleges, among other things, that serving iced beverages according to that standard practice results in under-filled iced beverages.  *Id*., ¶ 25.

Plaintiff Pincus alleges seven claims for relief:  (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) negligent misrepresentation; (4) unjust enrichment; (5) fraud; (6) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*); and (7) Violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/2 *et seq.*).  *Id*., ¶¶ 58-111.

*Pincus* is assigned to United States District Judge Thomas M. Durkin.  Pincus' counsel was advised of Starbucks' intent to seek to consolidate and transfer these proceedings and agreed to an extension of time for Starbucks to respond to the Complaint.  On May 25, 2016, the Court entered an order extending the date for response to June 21, 2016.  Discovery has not

---

[2] The complaint in *Forouzesh v. Starbucks Corporation* similarly alleges that Starbucks falsely describes the amount of cold drinks a customer will receive.  He alleges eight causes of action (breach of express warranty, breach of implied warranty of merchantability, negligent misrepresentation, unjust enrichment, fraud, violation of the CLRA, violation of the UCL and violation of the FAL) on behalf of "[a]ll persons in the state of California who purchased one or more of Defendant's Cold Drinks at any time between April 27, 2006 and the present (the Class)."

commenced.  Shortly after filing this motion, Starbucks will seek a stay of the case until the Panel rules on this Motion to Transfer.

C. **_Brittany Crittenden v. Starbucks Corporation_, Case No. 1:16-cv-03496 (S.D.N.Y.)**

On May 10, 2016, Brittany Crittenden filed a putative class action against Starbucks in the Southern District of New York.  She seeks to represent a putative class of "[a]ll persons or entities in New York who purchased lattes and mocha beverages from Starbucks stores located throughout the state of New York from 2010 to the present."  Crittenden Compl. ¶ 34 (Ex. C).

Plaintiff Crittenden's central allegations are that Starbucks' "espresso beverages," its "[l]atte drinks" and "[m]ocha drinks" specifically, are under-filled."  _Id._, ¶¶ 1, 8.  Plaintiff Crittenden alleges that Starbucks falsely advertises its espresso beverages by representing that its "'Tall' serving cups contain twelve (12) fluid ounces, 'Grande' contain sixteen (16) fluid ounces and 'Venti' sizes contain twenty (20) fluid ounces of liquid," when the espresso beverages are "regularly under filled….pursuant to a standardized recipe."  _Id._, ¶¶ 18-19.  Plaintiff alleges, among other things, that baristas do not have discretion to determine how much of any given ingredient is used to make a beverage.  _Id._, ¶ 20.  Plaintiff Crittenden alleges six claims for relief:  (1) breach of warranty; (2) violations of New York General Business Law § 349; (3) violations of New York General Business Law § 350; (4) fraudulent concealment/fraudulent inducement; (5) negligent misrepresentation; and (6) unjust enrichment.  _Id._, ¶¶ 46-93.  Plaintiff Crittenden brings these causes of action on behalf of a putative class of persons or entities in New York who purchased latte and mocha beverages in New York from 2010 to the present.  _Id._, ¶ 34.

_Crittenden_ is assigned to United States District Judge Katherine Polk Failla.  To date, Starbucks has not been served and has not filed a responsive pleading or a Rule 12(b) motion.

Discovery has not commenced.  Should Starbucks be served with process, it will move to stay *Crittenden* pending a decision by the Panel on this Motion to Transfer.

In sum, there has been no discovery in any of the actions.  Because all of the cases were recently filed, they are in the same procedural posture.[3]

## III.   Discussion

### A.     Legal Standard

28 U.S.C. § 1407 governs the transfer and coordination of multidistrict litigation.  The statute provides, in relevant part:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.  Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a).

When determining whether to stay a case pursuant to Section 1407, Panels evaluate whether transfer would "eliminate duplicative discovery, avoid the possibility of conflicting pretrial rulings and conserve judicial effort."  *In re Investors Funding Corp. of New York Sec. Litig.*, 437 F. Supp. 1199, 1202 (J.P.M.L. 1977); *In re: Cmty. Health Sys., Inc., Customer Sec. Data Breach Litig.*, No. MDL 2595, 2015 WL 500900, at *1 (J.P.M.L. Feb. 4, 2015) (finding transfer appropriate where it "will eliminate duplicative discovery, prevent inconsistent pretrial rulings on class certification and other issues, and conserve the resources of the parties, their counsel, and the judiciary.")  Here, each of these factors strongly supports transfer and

---

[3] Although there are presently four putative class actions filed against Starbucks, Starbucks has received two additional demands that contain allegations similar to those in the pending actions. If additional suits are filed while the instant motion is pending, Starbucks will advise the Panel pursuant to Rule 6.2(d).

consolidation.

**B.      Transfer Is Appropriate Where, As Here, the Factors Set Forth in 28 U.S.C. § 1407 Are Satisfied**

      **1.      The Cases Raise Common Issues of Fact.**

When the cases at issue all include factual allegations about a specific practice, service, or good that a defendant provides to its customers, the Panel has found that common issues of fact are present, warranting transfer.  *See, e.g., In re Higher One OneAccount Mktg. & Sales Practices Litig.*, 908 F. Supp. 2d 1371 (J.P.M.L. 2012) (granting transfer because "[t]he subject actions share numerous factual issues arising from allegations of unfair and deceptive conduct in []marketing and fee policies"); *In re Whole Foods Mkt., Inc., Greek Yogurt Mktg. & Sales Practices Litig.*, MDL No. 2588, 2014 WL 7006973 (J.P.M.L. Dec. 10, 2014); *In re Frito-Lay N. Am., Inc. "All Natural" Litig.*, MDL No. 2413, 2012 WL 6554657, at *1 (J.P.M.L. Dec. 12, 2012) (granting motion to transfer and finding that all of the actions "share factual questions arising out of allegations that Frito-Lay markets and labels certain food products grown from genetically modified organisms as 'All Natural,' in a manner that is allegedly misleading to consumers."); *In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, 867 F. Supp. 2d 1341, 1341 (J.P.M.L. 2012) ("These actions share factual questions arising out of allegations that Tropicana deceptively markets its not-from-concentrate orange juice as '100% Pure & Natural Orange Juice,' when in fact the orange juice is extensively processed."); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig*., 844 F. Supp. 2d 1380 (J.P.M.L. 2012) (granting motion to transfer where each case challenged representations made about organic milk); *In re Enfamil Lipil Mktg. & Sales Practices Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) ("All actions involve common factual questions arising from the marketing and advertising of the infant formula Enfamil."); *In re Glaceau Vitaminwater Mktg. & Sales*

*Practices Litig.*, 764 F. Supp. 2d 1349 (J.P.M.L. 2011) (transferring three putative class actions, alleging the defendant misrepresented the product as healthy, shared factual questions and centralization would 'eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.'").

Here, each case pleads the same principal factual allegation: that Starbucks' menu boards are false and deceptive because the beverages do not contain the quantities identified on the menu boards. All of the actions allege that the beverages are made by following standardized recipes that result in under-filled beverages and are served in cups that are not large enough to contain the quantity of beverage stated on the menu boards. Moreover, the specific factual issues underlying this central premise are common to all of the lawsuits. Starbucks will likely call upon the same witnesses to address these subjects in each case. These factors militate strongly in favor of granting this Motion to Transfer.

Transferring the actions to a single judge will preserve judicial resources by avoiding the need for several federal judges in different districts to address substantially similar legal issues and nearly identical factual patterns. *See, e.g., In re Union Pac. R.R. Co. Empl. Practices Litig.*, 314 F. Supp. 2d 1338, 1384 (J.P.M.L. 2004) (holding that centralization is necessary to "conserve the resources of the… judiciary."). The Panel has consistently recognized that significant efficiencies derive from centralizing marketing and sales practices litigation of the type filed against Starbucks in a single forum. *See In re Coca-Cola Prods. Mktg. & Sales Practices Litig.*, 37 F. Supp. 3d 1386, (J.P.M.L. 2014); *In re Glaceau Vitaminwater Mktg. & Sales Practices Litig.*, 764 F. Supp. 2d at 1351.

**2.     Transfer Will Promote the Convenience of the Witnesses and the Parties.**

Transferring the cases to one district will undoubtedly promote the convenience of the witnesses and the parties.  Other than the named plaintiffs, the only fact witnesses are likely to be Starbucks employees.  The witnesses likely to be called for deposition and testimony in each of the cases are the same individuals—those employees with knowledge of menu boards, product recipes, beverage volume, cup size and cup selection, serving equipment (including pitchers and scoops), barista training, consumer compliments and complaints, and sales and financial information.  Each plaintiff therefore is likely to seek to depose many of the same witnesses.  Making these employees available for depositions multiple times, in separate actions, would be logistically impractical and highly disruptive to Starbucks' business.  *See, e.g., In re Starmed Health Pers., Inc. Fair Labor Standards Act Litig.*, 317 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004) (ordering consolidation to "eliminate duplicative discovery" and "conserve the resources of the parties"); *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978) (finding the need for consolidation was "obvious" where plaintiffs "will have to depose many of the same witnesses, examine many of the same documents, and make many similar pretrial motions").

Absent a transfer, these employees would potentially be subject to serial depositions and/or trial testimony.  Starbucks also would have to produce documents in multiple jurisdictions.  Doing these tasks once, let alone multiple times, will be a significant impediment to Starbucks' ability to operate its business and will cause it to incur unnecessary and unreasonable burden and expense.  Thus, a transfer will minimize the heavy burden that these cases proceeding separately would otherwise place on Starbucks.

Indeed, the Panel has noted that consolidation of even two cases may be particularly appropriate where, as here, the cases "focus on a significant number of common events, defendants, and/or witnesses." *In re Fairfield Greenwich Grp. Secs. Litig.*, 655 F. Supp. 2d 1352, 1353 (J.P.M.L. 2009) (consolidating two cases with a single common defendant where the two matters shared questions of fact); *see also In re Mosaid Techs., Inc., Patent Litig.*, 283 F. Supp. 2d 1359, 1360 (J.P.M.L. 2003) (coordinating two actions involving one common party to "ensur[e] that common parties and witnesses are not involved in discovery demands and other pretrial matters in one action which duplicate activity that has already occurred or would occur in the other action").

If the California, Illinois and New York cases are not consolidated, Starbucks will be forced to litigate these nearly-identical cases at the same time, in different jurisdictions. Conversely, a transfer will not substantially inconvenience Plaintiffs.  Whether transferred or not, Plaintiffs in each action will only need to attend one set of depositions and hearings. Accordingly, a transfer will, on the whole, enhance the convenience of the parties and witnesses.

### 3. Transfer Will Promote the Just and Efficient Conduct of the Actions.

The Panel has noted that transfer promotes the just and efficient conduct of actions when it will "avoid duplicative discovery, eliminate the risk of inconsistent pretrial rulings on class certification and other pretrial matters, and conserve the resources of the parties, their counsel, and the judiciary." *See, e.g.*, *In re Shop-Vac Mktg. & Sales Practices Litig.*, MDL No. 2380, 2012 U.S. Dist. LEXIS 117365, at *2 (J.P.M.L. Aug. 16, 2012); *In re Park W. Galleries, Inc.*, 645 F. Supp. 2d 1358 (J.P.M.L. 2009) (granting transfer of three putative class actions involving claims of fraudulent sales of art during shipboard auctions); *In re Vertrue Mktg. & Sales Practices Litig.*, 626 F. Supp. 2d 1318 (J.P.M.L. 2009) (granting transfer of three putative class actions involving claims of deceptive marketing of free trial offers).

Because of the common factual allegations, it is a near certainty that discovery in all of the actions will involve most, if not all, of the same topics and the same witnesses.  For example, all of the lawsuits contain allegations regarding deceptive advertising about beverage quantities and cup sizes.  All of the actions allege that the beverages are made following standardized recipes that result in uniformly under-filled beverages.  Transferring the cases will ensure coordinated discovery and eliminate duplicative discovery on these and other factual issues.  Moreover, the cases raise a number of overlapping legal issues.  For example, the actions all allege claims for breach of express warranty, breach of implied warranty, unjust enrichment, misrepresentation and fraud/fraudulent concealment.  The actions also allege claims under the state statutes prohibiting false advertising and unfair competition.

Notably, the California, Illinois and New York consumer protection laws apply similar standards to determine whether a representation is material and/or misleading.  *See, e.g., Gold v. Lumber Liquidators, Inc.*, 2015 U.S. Dist. LEXIS 165264 (N.D. Cal. Nov. 30, 2015) (noting that the UCL, CLRA, GBL, and ICFA "command the same conclusion: some of the alleged misrepresentations are 'likely to deceive a reasonable consumer' (GBL) and/or have 'the capacity to deceive' (ICFA), while others do not."); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-12 (2003) (reasonable consumer standard applies to UCL and FAL claims); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (court may dismiss ICFA claim if the challenged representation is not misleading as a matter of law); *Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156, 2010 WL 2925955, *15 (E.D.N.Y. July 21, 2010) ("each [GBL] claim includes the requirement that a reasonable consumer could have been misled by defendants' conduct.")

Starbucks will argue that it has neither violated those statutes, behaved inequitably, nor committed a common law tort.  Absent coordination, multiple courts will be considering and deciding the same legal issues at the same time, risking inconsistent rulings.  *See, e.g., In re Tropicana*, 867 F. Supp. 2d at 1341 (recognizing that "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary."); *In re Chrysler LLC 2.7 Liter V-6 Engine Oil Sludge Prods. Liab. Litig.*, 598 F. Supp. 2d 1372, 1373 (J.P.M.L. 2009) (granting transfer of five putative statewide class claims with "nearly identical" factual allegations because doing so would allow one judge to "streamline proceedings and make consistent rulings on discovery disputes, dispositive motions, and issues relating to experts.").

Likewise, absent coordination there is a risk of inconsistent rulings on class certification.  The *Strumlauf* and *Crittenden* putative classes overlap.  The *Strumlauf* Plaintiffs seeks to represent a nationwide class on their consumer protection (false advertising and unfair competition ) claims, while the *Crittenden* Plaintiff seeks to certify a class of New York residents.  Thus, the *Strumlauf* Plaintiffs and *Crittenden* Plaintiff all seek to represent New York residents on their express and implied warranty claims, unjust enrichment claims and negligent misrepresentation claims.  *Compare Strumlauf* Compl. ¶¶ 38-57, 80-92 (Ex. A) *with Crittenden* Compl. ¶¶ 46-60, 74-93 (Ex. B).  Both *Pincus* and *Strumlauf* seek to certify nationwide classes as well as Illinois and California subclasses, respectively.  Without coordination, multiple courts could issue inconsistent rulings about whether class certification is proper.  *See, e.g., In re Portfolio Recovery Assocs., LLC*, 846 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) (noting that centralization would "eliminate the risk of inconsistent rulings on class certification" where statewide classes were "subsumed" by nationwide class); *see also* David F. Herr, Multidistrict

Litigation Manual § 5.24 (2012) (explaining that the existence of potentially conflicting class actions is a "dominating" factor in favor of transfer).  In such circumstances, the Panel should grant this motion.

### C.  Starbucks Seeks Transfer to the Western District of Washington at Seattle.

Starbucks suggests that the Panel coordinate the lawsuits in the Western District of Washington.  Starbucks' headquarters are in Seattle, Washington and all of the employees who are responsible for the creation and marketing of the beverages that are the subject of the putative class actions are located in Seattle, as are Starbucks' documents and records.  This makes the Western District of Washington the most appropriate transferee district.  *See Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liability Litig.*, 704 F. Supp. 2d 1379 (J.P.M.L. 2010) (recognizing that the Central District of California would be the most appropriate transferee district as Toyota was headquartered within the district and relevant documents and witnesses would be located there); *In re Webloyalty.com, Inc. Mktg. & Sales Practices Litig.*, 474 F. Supp. 2d 1353, 1354 (J.P.M.L. 2007) ("The Panel is persuaded that the District of Massachusetts is an appropriate transferee district for this litigation.  Webloyalty is headquartered nearby and it is likely to be the source of a substantial number of witnesses and documents subject to discovery.").

In addition, the Panel favors districts where the transferred cases will not add to an already overburdened docket.  *In re Webvention LLC ('294) Patent Litig.*, 831 F. Supp. 2d 1366, 1367 (J.P.M.L. 2011) (avoiding transfer to districts with "large civil caseloads" and choosing a transferee court with "more favorable" docket conditions); *see also In re GMAC Ins. Mgmt. Corp. Overtime Pay Litig.*, 342 F. Supp. 2d 1357, 1358 (J.P.M.L. 2004) (the Middle District of Florida had "the resources available to manage this litigation"); *In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001) (Minnesota courts are "not currently overtaxed . .

.").  The Western District of Washington is such a district.  According to the May 16, 2016 *MDL Statistics Report - Distribution of Pending MDL Dockets by District*, there is only one MDL presently pending in the Western District of Washington (Hon. John C. Coughenour) while there are 19 pending in the Northern District of California, 14 pending in the Northern District of Illinois and 31 pending in the Southern District of New York.[4]

According to Federal Court Management Statistics from 2015, the median time from filing to disposition for civil cases in the Western District of Washington is 7.4 months, which is faster than the Northern District of California, (7.9 months), the Northern District of Illinois (10.4 months) and the Southern District of New York (8.9 months).[5]  These conditions further support transfer to the Western District of Washington.  "The Panel has expressly stated that it will consider docket conditions in selecting a transferee district.  If two potential transferee districts have widely different docket conditions, one being current and the other being marked by long delays before trial, the Panel will favor the court with the most current docket." Multidistrict Litigation Manual § 6:17; *In re Skechers Toning Shoe Prod. Liability Litig.*, 831 F. Supp. 2d 1367, 1370 (J.P.M.L. 2011) (finding that the transferee district "enjoys general docket conditions conducive to the efficient resolution of this litigation."); *In re Teflon Prods. Liability Litig.*, 416 F. Supp. 2d 1364, 1365 (J.P.M.L. 2006) (finding that the transferee district "enjoys general docket conditions permitting the Panel to effect the Section 1407 assignment to a court with the present resources to devote to the pretrial matters that this docket is likely to require").

---

[4] *See* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-16-2016.pdf
[5] *See* http://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2015/03/31

With the fastest time to resolution and the smallest number of cases on the docket, the Western District of Washington presently has more favorable docket conditions along with significant expertise in multidistrict litigation.[6]

## IV.    Conclusion

The subject actions have substantively identical factual allegations and similar legal claims, will require duplicative discovery, and propose overlapping class definitions. The convenience of the witnesses and the parties, and the efficient and just conduct of these cases are all best served by granting this Motion for Coordination or Consolidation and Transfer and transferring these actions to the Western District of Washington.

Dated: May 26, 2016

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
/s/ Robert J. Guite
ROBERT J. GUITE
SASCHA HENRY
Attorneys for
Starbucks Corporation

---

[6] *Id*.  In 2015, the Western District of Washington had 2,769 cases, the Northern District of California had 4,439, the Northern District of Illinois had 8,489 and the Southern District of New York had 9,677.  *Id*.